1  SEMNAR & HARTMAN, LLP
2  Babak Semnar, Esq. (SBN 224890)
   Bob@sandiegoconsumerattorneys.com
   Jared M. Hartman, Esq. (SBN 254860)
3  jared@sandiegoconsumerattorneys.com
   400 S. Melrose Dr., Suite 209
4  Vista, CA 92081
   Telephone (951) 234-0881; Fax (888) 819-8230

5
   Attorneys for Plaintiff
6  SHONDA MYERS

## U.S. DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION

8

9  SHONDA MYERS, an individual,           Case No.:

10                  Plaintiff,            **COMPLAINT FOR DAMAGES
                                          AND INJUNCTIVE RELIEF, AND
                                          DEMAND FOR JURY TRIAL, FOR
11       v.                               VIOLATIONS OF:**

12  REAL TIME RESOLUTIONS, INC.,          1. **FEDERAL      TRUTH      IN
                                             LENDING ACT,**
13                  Defendant.            2. **STATE    OF   CALIFORNIA
                                             CONSUMER        CREDIT
14                                           REPORTING      AGENCIES
                                             ACT,**
15                                        3. **FEDERAL    FAIR    DEBT
                                             COLLECTION  PRACTICES
16                                           ACT,**
                                          4. **STATE    OF   CALIFORNIA
17                                           ROSENTHAL   FAIR   DEBT
                                             COLLECTION  PRACTICES
18                                           ACT**

19
20       Plaintiff, SHONDA MYERS, an Individual, by and through her attorneys of

21  record, hereby complains and alleges as follows:

## INTRODUCTION

1.     Plaintiff, by and through her attorneys of record, bring this action to secure redress from unlawful debt collection practices engaged in by Defendant REAL TIME RESOLUTIONS, INC. (hereinafter "Defendant REAL TIME") in violation of the Federal Truth In Lending Act (hereinafter "TILA"); the Federal Fair Debt Collection Practices Act (hereinafter "FDCPA"); the State of California Rosenthal Fair Debt Collection Practices Act (hereinafter "Rosenthal Act"); as well as the California Consumer Credit Reporting Agencies Act (hereinafter "CCCRAA").

2.     The TILA promotes consumers' informed use of credit by requiring meaningful disclosure of credit terms, and it states as follows: "It is the purpose of this title [15 USCS §§ 1601 et seq.] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."   15 U.S.C. § 1601(a).

3.     The TILA is a federal remedial statute that requires strict compliance, is to be liberally interpreted in favor of the consumer, and applies to an individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than four installments; and (iv) the credit is primarily for personal,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    family, or household purposes. 12 C.F.R. § 226.1(c).

2        4.    In 15 U.S.C. § 1692(a)-(e), the U.S. Legislature made the following

3    findings and purpose in creating the FDCPA:

4           Abusive practices. There is abundant evidence of the use of
            abusive, deceptive, and unfair debt collection practices by many
5           debt collectors. Abusive debt collection practices contribute to the
            number of personal bankruptcies, to marital instability, to the loss
6           of jobs, and to invasions of individual privacy.

7           Inadequacy of laws. Existing laws and procedures for redressing
            these injuries are inadequate to protect consumers.
8
            Available non-abusive collection methods. Means other than
9           misrepresentation or other abusive debt collection practices are
            available for the effective collection of debts.
10
            Interstate commerce. Abusive debt collection practices are carried
11          on to a substantial extent in interstate commerce and through
            means and instrumentalities of such commerce. Even where
12          abusive debt collection practices are purely intrastate in character,
            they nevertheless directly affect interstate commerce.
13
            Purposes. It is the purpose of this title [15 USCS §§ 1692 et seq.]
14          to eliminate abusive debt collection practices by debt collectors, to
            insure that those debt collectors who refrain from using abusive
15          debt collection practices are not competitively disadvantaged, and
            to promote consistent State action to protect consumers against
16          debt collection abuses.

17       5.    In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the

18   following findings and purpose in creating the Rosenthal Act:

19          (a)(1) The banking and credit system and grantors of credit to
            consumers are dependent upon the collection of just and owing
20          debts. Unfair or deceptive collection practices undermine the
            public confidence which is essential to the continued functioning
21          of the banking and credit system and sound extensions of credit to

3
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

consumers.

(2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard for the rights of the other.

(b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

6.      In California Civil Code § 1785.1(a)-(g), the California Legislature made the following findings and purpose in creating the CCCRAA:

(a) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, and general reputation of consumers.

(b) Consumer credit reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(c) There is a need to insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(d) It is the purpose of this title to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, hiring of a dwelling unit, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

(e) The Legislature hereby intends to regulate consumer credit reporting agencies pursuant to this title in a manner which will best protect the interests of the people of the State of California.

///

///

4

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

(f) The extension of credit is a privilege and not a right. Nothing in this title shall preclude a creditor from denying credit to any applicant providing such denial is based on factors not inconsistent with present law.

(g) Any clauses in contracts which prohibit any action required by this title are not in the public interest and shall be considered unenforceable. This shall not invalidate the other terms of such a contract.

## JURISDICTION AND VENUE

7.      This action arises out of Defendant REAL TIME's violations of the TILA, and FDCPA over which the U.S. District Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1640(e) and 15 U.S.C. § 1692k; as well as supplemental jurisdiction over the State law causes of action pursuant to 28 U.S.C. § 1367(a).

8.      Because Defendant REAL TIME regularly conducts business within the State of California by contacting California residents directly through the mails and telephone lines in order to collect upon home mortgage loans for California residents, and maintains a registered agent for service of process at CT CORPORATION SYSTEM; 818 West Seventh Street, Suite 930; City of Los Angeles, personal jurisdiction is established.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Riverside, City of Norco, State of California, which is within this judicial district; (ii) the real property subject of the matter is located within the County of Riverside, City of Norco; (iii) the conduct complained of herein occurred within this judicial district; and, (iv) Defendant has

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

conducted business within this judicial district at all times relevant.

## **FACTUAL ALLEGATIONS**

10.   On January 25, 2007, Plaintiff and her then-husband entered into a joint $83,000.00 home equity loan agreement with Countrywide Bank, N.A. (doing business as Countryside Home Loans) as the original lender.

11.   This loan was for Plaintiff and her then-husband to be provided $83,000.00 as a financial loan for them to use within their everyday lives, in exchange for a mortgage lien being placed upon the real property should Plaintiff fail to re-pay the principal and interest, subject to the terms of the agreement.

12.   This loan was agreed to "piggyback" off the first mortgage loan, and was therefore to be paid within 30 years as a close-ended loan.

13.   The loan was secured by the residence, as the lender recorded a Deed of Trust and Assignment of Rents with the County of Riverside to reflect the loan as a mortgage loan.

14.   Similar to hundreds of thousands of homeowners, during the financial crises of 2009-2011, Plaintiff and her husband were unable to make payments upon the loan.

15.   At some point in 2010, Plaintiff and her husband stopped making payments upon the loan.

16.   In November 2011, after the loan had already gone into default, the rights to collect upon and service the account were sold, transferred, or assigned to Defendant

6

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    REAL TIME.

2        17.    Ever since Defendant REAL TIME took over collection upon and

3    servicing the loan in November 2011, it has failed to send a periodic billing statement to

4    Plaintiff.

5        18.    Pursuant to 12 C.F.R. § 1026.41, Defendant REAL TIME has been

6    required to send a statement to Plaintiff every billing cycle listing specific information

7    with respect to Plaintiff's account.

8        19.    On or about January 19, 2016, Plaintiff contacted Defendant REAL TIME

9    to inquire as to why she has not received any periodic billing statement.

10       20.    Defendant's agent with whom Plaintiff spoke claimed that they have not

11   sent any statements because the loan is in default.

12       21.    The list of exemptions in 12 C.F.R. § 1026.41(e) does not include default

13   upon the account as a basis for exemption from the required periodic billing statement.

14       22.    This claim is also in direct contradiction to Defendant's November 4, 2011

15   letter to Plaintiff that states, "If you are not in bankruptcy, or have not been previously

16   discharged in bankruptcy, you will soon receive monthly billing statements from us."

17       23.    Based on the above, it is clear that REAL TIME's violations of 12 C.F.R. §

18   1026.41 were intentional, knowing, and deliberate, and were not unintentional

19   violations born out of a bona fide error.

20       24.    Because Plaintiff was not provided with the required statements, Plaintiff

21   was completely ignorant of the information required by 12 C.F.R. § 1026.41 for her to

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

make informed decisions as to how to handle the account, including whether to seek re-financing with a different lender.

25.    Plaintiff has also discovered in January 2016 that Defendant REAL TIME has reported to "The Big Three" consumer credit reporting agencies—Experian, Equifax, and Trans Union—inaccurate information about the loan in such a manner as to create the false and misleading impression that the account with Defendant is an entirely different loan than the one issued by the original creditor, which is also being reported by the original lender upon her credit reports.

26.    Plaintiff has learned that Defendant REAL TIME, as a "furnisher" of credit reporting information, is required to utilize something called the "Metro 2 Guidelines" for providing its data to the credit reporting agencies.   Metro 2 is a credit reporting guideline developed by the Consumer Data Industry Association ("CDIA"), a trade-group of which Experian, Equifax, and Trans Union are key members.   On information and belief, Metro 2 represents the industry standard, and credit furnishers are required by the credit bureaus to furnish information by following, and adhering to, the Metro 2 Guidelines.

27.    For instance, the Metro 2 Format—which all furnishers of information to the credit reporting agencies are required to follow with respect to any particular credit account—requires all third party collection agencies and debt purchasers that acquire a line of credit are required to report the account opening date as follows:

a.   "Date Opened (Base Segment, Field 10) — the date the account was

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

purchased by the debt buyer or placed/assigned to the third party collection agency."

    b. In this matter, Defendant REAL TIME has reported to "The Big Three" that the date opened on the account is January 2007, which is the date that the account was opened with the original creditor, and has failed to report the date Defendant REAL TIME actually acquired the account.

28.    Additionally, the Metro 2 format requires all third party collection agencies and debt purchasers that acquire a line of credit to report the name of the original creditor as follows (bold in original):

    a. "The K1 Segment must be present each time the account is reported by collection agencies, debt buyers, check guarantee companies, student loan guaranty agencies, and the U.S. Department of Education. **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent. Some state laws and CDIA policy stipulate that the original client/creditor must be identified. Federal law stipulates that the name of the payee must be identified when reporting returned checks."

    b. "Debt Buyers: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been sold

9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   multiple times to different debt buyers. Refer to the K2 Segment for

2   ―purchased from‖ information."

3   c.  Metro 2 also states that, if the name of the entity from whom the debt

4   purchaser acquired the account is the same name as the original

5   creditor, then only the name of the original creditor need be reported.

6   d.  In this matter, Defendant REAL TIME has failed to include anywhere

7   in its reporting that it acquired the account as a third party, and has

8   failed to indicate anywhere that the account originated with a different

9   entity.

10   29.   Additionally, the Metro 2 format requires the furnisher to indicate if the

11   account is joint or individual as follows:

12   a.  "ECOA Code (Base Segment, Field 37; J1 and J2 Segment, Field 10)

13   ― used to designate an account as joint, individual, etc. in compliance

14   with the Equal Credit Opportunity Act (ECOA)."

15   b.  In this matter, however, Defendant REAL TIME has failed to report

16   that this account is a joint account with her then-husband, which creates

17   the inaccurate and misleading impression that she alone is liable upon

18   the account.

19   30.   By failing to adhere to the above-required reporting requirements

20   mandated by Metro 2, Defendant REAL TIME has created the false and misleading

21   impression that it is in possession of an entirely different loan than the one entered into

between Plaintiff and the original creditor, which creates the further inaccurate and misleading impression that she entered into two different home equity lines of credit in January 2007.

31.    This inaccurate and misleading impression undermines the true and accurate reflection of Plaintiff's current credit-standing and creditworthiness to potential creditors.

32.    Moreover, upon information and belief, the credit scoring models are not distinguishing between the original account that is still on her credit report and the account as reported by Defendant REAL TIME, which is causing her consumer credit score to suffer significantly as if she is in default on two separate home equity loans instead of just the one.

33.    As a consequence, Plaintiff has been denied the ability to secure favorable lines of consumer credit from new potential lenders, and has therefore suffered actual damages.

34.    Plaintiff called Defendant REAL TIME in June of 2015 to dispute the amount alleged to be due, which should have prompted Defendant to investigate the account and would have allowed Defendant to discover these inaccuracies.

35.    Defendant's violations described above have caused undue mental anguish and stress upon Plaintiff, in that she has suffered anxiety, nervousness, humiliation, loss of sleep, inability to focus at work, and feelings of despair and hopelessness due to her essentially being held hostage by Defendant since she was not able to begin to discuss

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  with a new lender the details needed for re-financing.

2  **FIRST CAUSE OF ACTION**
**12 C.F.R. § 1026.41**
3  **(VIOLATIONS OF TILA)**

4      36.    Plaintiff re-alleges and incorporates by reference the above paragraphs, as

5  though set forth fully herein.

6      37.    As stated above, this loan was to "piggyback" off the first mortgage, which

7  contains a term of years of 30 years, and was secured by the residence with a Deed of

8  Trust and Assignment of Rents being recorded with the County of Riverside.

9      38.    As stated above, Defendant REAL TIME took over collection upon and

10  servicing the account by transfer, sale, or assignment in November 2011.

11      39.    Pursuant to subsection 12 C.F.R. § 1026.41(a), this loan applies for the

12  "Regulation Z' requirements as follows:

13          a.  In general. (1) Scope. This section applies to a closed-end consumer

14              credit transaction secured by a dwelling, unless an exemption in

15              paragraph (e) of this section applies. A closed-end consumer credit

16              transaction secured by a dwelling is referred to as a mortgage loan for

17              purposes of this section.

18          b.  (2) Periodic statements. A servicer of a transaction subject to this

19              section shall provide the consumer, for each billing cycle, a periodic

20              statement meeting the requirements of paragraphs (b), (c), and (d) of

21              this section. If a mortgage loan has a billing cycle shorter than a period

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   of 31 days (for example, a bi-weekly billing cycle), a periodic statement

2   covering an entire month may be used. For the purposes of this section,

3   servicer includes the creditor, assignee, or servicer, as applicable. A

4   creditor or assignee that does not currently own the mortgage loan or

5   the mortgage servicing rights is not subject to the requirement in this

6   section to provide a periodic statement.

7   40.    Therefore, pursuant to "Regulation Z" of the TILA (12 C.F.R. § 1026.41),

8   Defendant REAL TIME has been obligated at all times to provide to Plaintiff a periodic

9   statement for each billing cycle containing the following information:

10   a.  The amount currently due, and shown more prominently than other

11   disclosures on the page, and the amount due under each payment option

12   if the transaction has multiple payment options;

13   b.  The due date;

14   c.  The amount of any late payment fee and the date on which the fee will

15   be imposed if payment is not made and previously made;

16   d.  Explanation of amount due;

17   e.  A breakdown showing how much of the monthly payment amount, if

18   any, will be applied to principal, interest, and escrow, along with

19   information on whether the principal balance will increase, decrease, or

20   stay the same for each payment option;

21   f.  The total sum of any fees or charges imposed since the last statement;

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

g.  Any payment amount past due;

h.  Past payment breakdown;

i.  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account;

j.  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account;

k.  A list of all the transaction activity that occurred since the last statement;

l.  Partial payment information;

m. A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement;

n.  The amount of the outstanding principal balance;

o.  The current interest rate in effect for the mortgage loan;

p.  The date after which the interest rate may next change;

q.  The existence of any prepayment penalty that may be charged;

14
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

r.  The website to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations;

s.  If more than 45 days delinquent:

    i.  The date on which the consumer became delinquent,

    ii.  A notification of possible risks that may be incurred if the delinquency is not cured,

    iii.  An account history since the last time the account was current,

    iv.   The remaining past due from each billing cycle,

    v.  A notice of any loss mitigation program to which the consumer has agreed, if applicable,

    vi.  A notice of whether the servicer has made a filing required by law for foreclosure proceedings,

    vii.  The total payment amount needed to bring the account current, and

    viii.  A reference to the homeownership counselor information.

41.   The periodic statement must be delivered or placed in the mail within a reasonably prompt time after the payment due date or the end of any courtesy period provided for the previous billing cycle.

42.   The periodic statement must be delivered or placed in the mail within a reasonably prompt time after the payment due date or the end of any courtesy period provided for the previous billing cycle.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

43.     Pursuant to its authority under 15 U.S.C. § 1604(a), the Board of Governors of the Federal Reserve System issued Regulation Z.

44.     In interpreting the TILA and implementing Regulation Z of Federal Reserve Board, opinions by the Board of Governors of the Federal Reserve System staff construing the TILA or Regulation Z should be dispositive unless they are demonstrably irrational, as the TILA is best construed by those who give it substance in promulgating regulations under it, and Congress having specifically designated the Board and its staff as the primary source for interpretation and application of truth in lending law. *Ford Motor Credit Co. v Milhollin* (1980) 444 US 555, 63 L Ed 2d 22, 100 S Ct 790.

45.     By willfully, deliberately, and intentionally refusing to send required periodic statements under Regulation Z the entire time since it took over the account sometime in 2011, Defendant REAL TIME has committed multiple violations of the Truth in Lending Act, which violations continue to occur.

46.     These violations are willful because Defendant's agent claimed to Plaintiff that they are not sending her any statements because the account is in default, which policy is in direct contradiction to the promise in Defendant's November 4, 2011 letter that it will soon deliver such statements to Plaintiff.

47.     However, the list of exemptions in 12 C.F.R. § 1026.41(e) does not include default upon the account as a basis for exemption from the required periodic billing statement.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

48.     Pursuant to 15 U.S.C. § 1640(a)(1)-(4), Plaintiff is entitled to actual damages, statutory damages of not less than $400.00 and not greater than $4,000.00, as well as attorneys' fees and costs for pursuing prosecution.

49.     The civil penalty provision of 15 U.S.C. § 1640 applies to a creditor's failure to abide by regulations promulgated by the Federal Reserve Board.  *Mourning v. Family Publications Serv.* (1973) 411 U.S. 356, 36 L. Ed. 2d 318, 93 S. Ct. 1652.

50.     As a result of these violations, Plaintiff has suffered actual damages by way of emotional distress since she has been ignorant of exactly how much to pay every month, and has been unable to obtain the information necessary to consider her options, such as re-financing with a different lender and also to make an effort to determine whether the amount alleged by Defendant is accurate.

**SECOND CAUSE OF ACTION**
**Calif. Civ. Code § 1785.25(a)**
**(CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT)**

51.     Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs as if fully stated herein.

52.     As the furnisher of information to credit reporting agencies, Defendant REAL TIME is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known the information was incomplete or inaccurate, as required by Calif. Civ. Code § 1785.25(a) of the California CCRA.

53.     The manner in which Defendant REAL TIME has failed to adhere to the

17
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

reporting requirements of Metro has created the inaccurate and misleading impression that this loan is an entirely different loan than the one entered into with the original creditor as follows:

a. Defendant has failed to report to the consumer credit reporting agencies the date it took over the loan, and has instead reported the January 2007 date the loan was opened with the original creditor;

b. Defendant has failed to report the name of the original creditor, and has failed to report from whom it acquired the account;

c. Defendant has failed to indicate that the account is jointly liable with Plaintiff's then-husband.

54. As a result, Defendant has violated its obligation to report complete and accurate information pursuant to Calif. Civ. Code § 1785.25(a).

55. These violations are continuing to occur.

56. Even if Defendant's derogatory reporting is technically accurate, it is still a violation of this law if the derogatory reporting is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal. App. 4th 548.

57. As a result of these violations, Plaintiff has suffered actual damages by way of reduction in her consumer credit score due to the credit scoring models not identifying the two accounts as the same account, loss of an accurate reflection of her current credit standing and creditworthiness, denial of favorable lines of credit from

18

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    new lenders, as well as emotional distress.

2        58.    Pursuant to Calif. Civ. Code § 1785.31, Plaintiff is therefore entitled to an

3    award of actual damages, statutory damages of $100.00 to $5,000.00 for every willful

4    violation, injunctive relief, as well as attorneys' fees and costs for pursuing prosecution

5    of these violations.

6                    **THIRD CAUSE OF ACTION**
                     **15 U.S.C. § 1692k**
7        **(FEDERAL FAIR DEBT COLLECTION PRACTICES ACT)**

8        59.    Plaintiff repeats, re-alleges, and incorporates by reference, all other

9    paragraphs as if fully stated herein.

10       60.    CASE-LAW THAT THEY TOOK OVER AFTER DEFAULT, SO YES

11   ON FDCPA.

12       61.    Because Defendant REAL TIME took over servicing of the account after it

13   had already gone into default, Defendant REAL TIME is therefore a debt collector

14   within the meaning of 15 U.S.C. §1692a(6) of the Federal FDCPA.  *Casault v. Fannie*

15   *Mae* (Cent. Dist. Calif. Nov. 26, 2012) 915 F. Supp. 2d 1113, 1126.

16       62.    Because the account in question pertains to a home equity line of credit

17   that was issued to Plaintiff as finances for her to use within her everyday life, the

18   account in question is therefore a consumer debt within the meaning of 15 U.S.C.

19   §1692a(5) and Plaintiff is a consumer within the meaning of 15 U.S.C. §1692a(3) of the

20   Federal FDCPA.

21       63.    By reporting upon Plaintiff's consumer credit report inaccurate and

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

misleading information that creates the false impression that Plaintiff is individually responsible for the alleged debt and the account is entirely different from the original account, Defendant has therefore committed the following violations of the Federal FDCPA:

    a.      Engaged in false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e;

    b.      Has falsely represented the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A);

    c.      Has taken legal action that cannot legally be taken in violation of 15 U.S.C. § 1692e(5);

    d.      Has communicated to the credit reporting agencies information that is known or should be known to be false in violation of 15 U.S.C. § 1692e(8);

    e.      Has used false representations and deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10) of the FDCPA.

64.   Plaintiff is informed and believes that these violations were willful, in that Defendant could have easily discovered the proper information by simply reviewing its own account records in response to Plaintiff's dispute of the account in June 2015.

65.   Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to statutory damages of

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   up to $1,000.00, actual damages, attorneys' fees, and costs of prosecution.

2   ### FOURTH CAUSE OF ACTION
    ### Calif. Civ. Code § 1788.30
3   ### (CALIF. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT)

4       66.    Plaintiff repeats, re-alleges, and incorporates by reference, all other

5   paragraphs as if fully stated herein.

6       67.    By violating the Federal FDCPA, as identified the First Cause of Action

7   above, Defendant has also necessarily violated the Rosenthal FDCPA via Calif. Civil

8   Code § 1788.17, as the Rosenthal FDCPA has incorporated each of those provisions of

9   the FDCPA.

10      68.    Plaintiff is informed and believes that these violations were willful, in that

11  Defendant could have easily discovered the proper information by simply reviewing its

12  own account records in response to Plaintiff's dispute of the account in June 2015.

13      69.    Pursuant to Cal. Civ. Code § 1788.30, Plaintiff is entitled to statutory

14  damages of up to $1,000.00, actual damages, attorneys' fees, and costs of prosecution.

15  ### PRAYER FOR RELIEF

16      WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and

17  Plaintiff be awarded damages from Defendant as follows:

18  ### TILA VIOLATIONS

19  •   An award of actual damages in the amount of $75,000.00, or as the jury may

20      allow, pursuant to 15 U.S.C. § 1640(a);

21

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

- An award of statutory damages of $4,000.00 pursuant to 15 U.S.C. § 1640(a);

- An award of attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a).

## CALIF. CCRAA VIOLATIONS

- Actual damages in the amount of $75,000.00, or as the jury may allow, for Defendant's negligent violations of Calif. Civ. Code § 1785.25(a), pursuant to Calif. Civ. Code § 1785.31(a)(1);

- Actual damages as identified above, plus punitive damages of $5,000.00 for each and every willful violation of Calif. Civ. Code § 1785.25(a), pursuant to Calif. Civ. Code § 1785.31(a)(2)(A)-(C);

- Injunctive relief pursuant to Calif. Civ. Code § 1785.31(b); and

- An award of costs of litigation and attorneys' fees, pursuant to Calif. Civ. Code § 1785.31(d).

## FEDERAL FDCPA

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of actual damages in the amount of $75,000.00, or as the jury may allow, pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of costs of litigation and attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3).

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**CALIF. ROSENTHAL FDCPA**

- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

- An award of actual damages of $75,000.00, or as the jury may allow, pursuant to California Civil Code § 1788.30(a);

- An award of costs of litigation and attorneys' fees pursuant to Cal. Civ. Code § 1788.30(c);

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: February 1, 2016                    Respectfully submitted,

                                           SEMNAR & HARTMAN, LLP

                              By:   /s/ Jared M. Hartman_____
                                    Jared M. Hartman, Esq.
                                    Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**